# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE ) 
 )
 v. ) No. 1604008485A
 )
DWAYNE DUNNELL, )
 )
 Defendant )

**Submitted: January 14, 2021**
**Decided: April 30, 2021**

**Upon Defendant's Motion for Postconviction Relief – Denied**
**Upon Postconviction Counsel's Motion to Withdraw – Granted**

## ORDER

The defendant was indicted for various drug and firearm charges after a confidential informant tipped off the police and participated in two controlled purchases of heroin. On both occasions, the informant arranged the sale with the defendant and then obtained the heroin from the defendant's cousin at their shared residence. Search warrants executed on that residence and the defendant's vehicle revealed over three thousand bags of heroin, a firearm, ammunition, and five cell phones. The defendant's trial counsel filed several pre-trial motions concerning the evidence, all of which were denied. After a four-day jury trial, the defendant was convicted of drug dealing, drug possession, and conspiracy, but was acquitted of all the firearm charges. The defendant then appealed his convictions, first by moving for a judgment of acquittal, then by appealing directly to the Delaware Supreme

1

Court. After his convictions were affirmed on appeal, the defendant moved for postconviction relief. The defendant asserts eighteen grounds for relief, all of which relate to the allegedly ineffective assistance provided by his trial and appellate counsel. The defendant's claims primarily focus on arguments or motions he believes counsel should have raised. Because the defendant's claims fail to satisfy the requirements of an ineffective assistance claim or are barred procedurally, the defendant's motion is denied.

## FACTUAL & PROCEDURAL BACKGROUND

### A. Initial Investigation & Defendant's Arrest

1. In 2016, a confidential informant ("C.I.") advised Detective Bruhn of the New Castle County Drug Control Unit that a man going by the name "Buck" was selling heroin. The C.I. provided two phone numbers for "Buck," and Detective Bruhn determined through further investigation that "Buck" was a nickname for Defendant Dwayne Dunnell ("Defendant"). The C.I. also reviewed a photo of Defendant and positively identified him as "Buck."

2. In the week of April 4, 2016, the New Castle County Police Department ("NCCPD") had the same C.I. arrange a heroin purchase with "Buck." The C.I. called "Buck" in the presence of NCCPD to arrange the purchase, then went to a residence located at 24 Gull Turn in Newark, Delaware to purchase heroin from a person known as "Dreads." NCCPD determined that Defendant's cousin, Kyle

Dunnell, listed 24 Gull Turn as his address and showed the C.I. a picture of Kyle,[1] whom the C.I. identified as "Dreads."  NCCPD used the C.I. to purchase heroin from 24 Gull Turn again during the week of April 11, 2016.  As with the first purchase, the C.I. called "Buck" to arrange the transaction and purchased the heroin from "Dreads."

3.    On April 12, 2016, the investigating officers applied for and were granted a search warrant for 24 Gull Turn.  The next day, on April 13, 2016, police executed the search warrant.  Kyle Dunnell and Defendant were at the residence when the warrant was executed.  Although no contraband was found on Kyle or Defendant, police found 3,488 bags of heroin, a loaded handgun, and a loaded extended magazine in a safe in the laundry room.  Police found the key for the safe in the pocket of a pair of Kyle's pants.

4.    Officers also found a bag of pink glassine baggies in the kitchen of the home, a pay stub with Defendant's name on it in the laundry room, and shotgun shells in the laundry room and hall closet.  The police also found $371.00 in cash and two cell phones in Defendant's bedroom.  Two more cell phones were found in Kyle's room, and another digital scale was located in a spare bedroom.

5.    NCCPD obtained search warrants for a silver Lexus parked in the driveway of 24 Gull Turn and a Jeep Grand Cherokee that was parked across the

---

[1] The Court refers to Kyle Dunnell by his first name for clarity.  No disrespect is intended.

street. Police found a fifth phone, an Alcatel flip phone, inside the silver Lexus. Defendant told NCCPD Detective Eugene Giallombardo that everything in the car was his, and Defendant later did not deny the Alcatel flip phone was his when the Detective Giallombardo described the car's contents during Defendant's interview. Police obtained search warrants for all the cell phones. One text message, sent from the Alcatel flip phone at 2:54 am on March 12, 2016, read "King Kong." Some of the heroin found in the safe was stamped with "King Kong."

6. A grand jury indicted Defendant for Drug Dealing in Heroin (Tier 4), Aggravated Possession of Heroin (Tier 5), Conspiracy Second Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm while in Possession of a Controlled Substance, Possession of Drug Paraphernalia, Possession of a Firearm by a Person Prohibited (PFBPP), and Possession of Ammunition by a Person Prohibited (PABPP).[2]

## B. Trial & Conviction

7. Defendant was represented at trial by John S. Malik, Esquire ("Trial Counsel"). Trial Counsel filed several pre-trial motions. First, Trial Counsel filed a motion to compel the production of *Brady* materials. In that motion, Trial Counsel sought to obtain the C.I.'s identity, arguing it was exculpatory *Brady* material

---

[2] The PFBPP and PABPP charges were severed into a "B" trial, which was presented immediately after the jury concluded its deliberations in the "A" trial. The jury found Dunnell not guilty of both charges in the B case.

4

because the information would confirm Defendant did not sell drugs to the C.I. and was not present at the transaction. Trial Counsel also filed a motion to suppress evidence seized from Defendant's Lexus on the ground that the affidavit supporting the warrant failed to establish probable cause because the C.I.'s tip was unreliable, and the K-9 sniff contradicted the C.I.'s tip. Finally, Trial Counsel filed a motion in limine to exclude the text message evidence found on the cell phones NCCPD seized. Trial Counsel argued the text messages should be excluded because (i) they were not properly authenticated; (ii) the text messages constituted inadmissible hearsay evidence; and (iii) the probative value of the messages substantially was outweighed by the danger of unfair prejudice. The Court denied all three pre-trial motions.

8. At trial, Alia Harris, a forensic chemist, testified that forensic testing performed on the substance found in the safe confirmed it was heroin with a total weight of 17.27 grams. NCCPD Detective Darryl Santry testified regarding text messages that were found on the four cell phones retrieved during the search of the residence. Detective Vincent Jordan of the Wilmington Police Department offered his expert opinion that the heroin found in the safe was not for personal use. Detective Jordan offered several reasons for this conclusion. For example, he testified it is not typical for drug users to possess such a large amount of heroin. Furthermore, he testified drug dealers commonly will have a firearm located near

their drug supply. Detective Jordan also opined that drug users do not typically have large sums of money, that drug dealers often do have such sums, and that drug dealers frequently have one cell phone for personal use and additional cell phones for business. Detective Jordan also compared the text messages found on Kyle's phone with those on the two phones found in Defendant's bedroom and concluded that Kyle and Defendant were working together to sell drugs. The Detective opined Defendant possessed more than three thousand bags of heroin with the intent to deliver it, and Defendant and Kyle were working together to sell drugs.

9. On March 3, 2017, after a four-day trial, the jury convicted Defendant of Drug Dealing in Heroin (Tier 4), Aggravated Possession of Heroin (Tier 5), and Conspiracy Second Degree. Those charges stemmed from the drugs that police officers located in a safe found in the laundry room of the home where Defendant lived with his cousin. The jury found Defendant not guilty of charges relating to the firearm and drug paraphernalia also found in the safe and home during the search. On September 8, 2017, this Court denied Defendant's Motion for Judgment of Acquittal. The Court then sentenced Defendant, effective April 13, 2016, to a total of nine years at Level V, suspended after seven years for probation.

**C. Direct Appeal**

10. On appeal, Defendant was represented by Nicole M. Walker, Esquire ("Appellate Counsel"). Appellate Counsel filed the appeal on May 22, 2018, raising

6

four arguments: (i) the State failed to prove constructive possession of the contraband found within the safe; (ii) the Court erred in admitting the text message evidence because it lacked proper authentication; (iii) the Court erred by failing to provide a limiting instruction to the jury for its consideration of the text message evidence; and (iv) the cumulative effect of these errors deprived Defendant of a fair trial. On November 2, 2018, the Delaware Supreme Court affirmed Defendant's convictions.[3]

11. Defendant filed a *pro se* Motion for Postconviction Relief (the "Motion") on April 8, 2019 and subsequently filed several addenda to the Motion adding new grounds for relief.[4] On April 17, 2019, the Court appointed counsel to represent Defendant for purposes of seeking postconviction relief ("Postconviction Counsel").[5] On December 19, 2019, Postconviction Counsel moved to withdraw under Rule 61(e)(7), stating he thoroughly had investigated Defendant's case and determined no claims for postconviction relief ethically could be advocated.[6] The parties fully briefed the matter, including the State's response, affidavits from Trial

---

[3] *Dunnell v. State*, 2018 WL 5782851 (Del. Nov. 2, 2018).
[4] *See generally* Def.'s Mot.; Addendum to Def.'s Mot., D.I. 127; Addendum to Def.'s Mot., D.I. 132; Addendum to Def.'s Mot., D.I. 133; Addendum to Def.'s Mot., D.I. 143; Addendum to Def.'s Mot., D.I. 161; Addendum to Def.'s Mot., D.I. 163.
[5] Order Appointing Counsel, D.I. 128.
[6] Postconviction Counsel's Mot., D.I. 148. The addenda advancing grounds 17 and 18 were filed after Postconviction Counsel's motion to withdraw and therefore were not addressed in the motion, but the merits of those claims are considered and rejected herein.

and Appellate Counsel, and Defendant's responses to Postconviction Counsel's motion to withdraw.[7]

## PARTIES' CONTENTIONS

### A. Defendant

12. Defendant's motion and addenda assert eighteen grounds for relief that primarily are focused on alleged ineffective assistance by his Trial and Appellate Counsel.

#### i. Ground 1: Trial Counsel's Failure to Object to an Abuse of Discretion.

13. Defendant asserts Trial Counsel was ineffective for failing to object to the Court's admission of various text messages.[8] According to Defendant, Trial Counsel should have argued that the requirements for the applicable hearsay exception were not met and should have sought a limiting instruction.[9] Defendant also argues admission of the text message evidence violated the Confrontation Clause in the Sixth Amendment to the United States Constitution.

---

[7] *See generally* Def.'s Mot.; State's Resp.; Trial Counsel's Aff.; Appellate Counsel's Aff.; Addendum to Def.'s Mot., D.I. 127; Addendum to Def.'s Mot., D.I. 132; Addendum to Def.'s Mot., D.I. 133; Addendum to Def.'s Mot., D.I. 143; Addendum to Def.'s Mot., D.I. 161; Addendum to Def.'s Mot., D.I. 163.

[8] Def.'s Mot. at 1.

[9] *Id.*

## ii.    Ground 2: Trial Counsel's Acquiescence with the State

14.    Defendant also alleges Trial Counsel "acquiesced" with the State. On August 15, 2016, a hearing was held before a Superior Court Commissioner concerning Defendant's motion to compel the State to identify the C.I.[10] The Commissioner originally concluded a *Flowers* hearing was appropriate, but three days later the Commissioner denied the motion to compel, concluding the C.I.'s identity would not materially aid the defense.[11] Defendant alleges Trial Counsel must have had a conversation with the State that led the Commissioner to deny the motion after originally concluding a *Flowers* hearing was warranted.[12]

## iii.    Ground 3: Trial Counsel's Failure to Investigate

15.    During discovery, the State gave Defendant a supplemental police report containing the names of the declarants associated with the incoming text messages from the phones.[13] Defendant alleges he asked Trial Counsel to contact these declarants, but Trial Counsel failed to do so. Defendant theorizes these individuals could have testified on his behalf.[14]

---

[10] *Id*. at 2.
[11] *Id*.
[12] *Id*.
[13] *Id*.
[14] *Id*.

9

#### iv.   Ground 4: Trial Counsel's Failure to Move to Suppress

16.   Defendant argues Trial Counsel was ineffective for failing to move to suppress the text message evidence obtained from the cell phones.[15]   Defendant maintains the warrants for the phones were not supported by sufficient probable cause because the affidavits did not establish a sufficient nexus between the alleged crimes and the cell phones.[16]   Further, Defendant asserts the warrant was overly broad.[17] Defendant also argues the warrants for the phones only were drafted to identify a possible owner of the phones, and the text messages extracted from the phones therefore were obtained illegally.[18]   Defendant further alleges the warrant for the Alcatel phone was unconstitutional because it did not contain any temporal limitation.[19]  Defendant maintains that, had Trial Counsel moved to suppress the text message evidence, the State would not have been able to move forward with trial.[20]

#### v.   Ground 5: Trial Counsel's Failure to Object

17.   Defendant argues Trial Counsel should have objected to the admission of the seized drugs because the State did not establish the chain of custody.[21]   The drugs were not in the courthouse on the morning of trial.[22]   The State explained to the

---

[15] *Id*. at 3.
[16] *Id*.
[17] *Id*.
[18] Addendum to Def.'s Mot., D.I. 127 (Ground 4).
[19] *Id*.
[20] *Id*.
[21] Def.'s Mot. at 3-4.
[22] *Id*. at 3.

Court that the evidence was either at a forensic lab or at NCCPD.[23]   Defendant

maintains Trial Counsel should have raised a chain of custody objection to determine

the location of the misplaced evidence.[24]

### vi.     Ground 6: Trial Counsel's Failure to Impeach a Witness

18.     Defendant maintains Trial Counsel should have impeached the

testimony of forensic chemist Alia Harris because it contained several

inconsistencies.[25]   At trial, Ms. Harris provided the formula by which she calculated

the total weight of the drug evidence.[26]   Defendant alleges he later reviewed the

litigation packet, applied the formula himself, and reached a weight that was 4.26

grams less than Ms. Harris's calculation.[27]   Defendant argues Ms. Harris's work was

compromised such that the accuracy of the drug's total weight was unknown.[28]

Defendant therefore maintains that, had Trial Counsel reviewed the litigation packet

and impeached Ms. Harris's testimony, the outcome of trial or sentencing may have

been different.[29]

---

[23] *Id.*
[24] *Id.*
[25] *Id.* at 4-5.
[26] *Id.* at 4.
[27] *Id.*
[28] *Id.* at 5.
[29] *Id.*

### vii. Ground 7: Trial Counsel's Failure to Raise a Defense

19. Defendant argues Trial Counsel also was ineffective for failing to call as a witness a particular individual who authored one of the incoming text messages.[30] Defendant alleges an author of one of the incoming text messages was listed as a trial witness and appeared in the courthouse, but then refused to testify after Trial Counsel advised the witness he would be taken into custody and charged if he testified.[31] Defendant argues this witness's testimony was important and would have contradicted the State's characterization of the text messages.[32]

### viii. Ground 8: Appellate Counsel's Failure to Appeal the Motion in Limine

20. Defendant asserts Appellate Counsel should have appealed the Superior Court's denial of Defendant's motion in limine.[33]

### ix. Ground 9: Appellate Counsel's Failure to Appeal the Motion to Suppress

21. Defendant argues Appellate Counsel should have appealed the Superior Court's decision denying the motion to suppress the Alcatel flip phone found during the police's search of the Lexus.[34] Defendant argues the suppression issue should

---

[30] *Id*. at 5-6.
[31] *Id*. at 6.
[32] *Id*.
[33] *Id*.
[34] *Id*. at 6-7.

have been raised on direct appeal because the warrant for the Lexus was insufficient since the C.I.'s information never was corroborated.[35]

### x. Ground 10: Appellate Counsel's Failure to Investigate

22. Defendant alleges Appellate Counsel failed to investigate adequately the text messages' hearsay issue and incorrectly challenged the admission of the text messages under D.R.E. 404(b) rather than 803(3), which Defendant contends applied.[36] According to Defendant, Appellate Counsel challenged the text messages under the incorrect rule because she did not obtain the transcript from Defendant's motion in limine hearing before she prepared her opening brief.[37]

### xi. Ground 11: Trial Counsel's Response to the Jury's Note

23. During deliberations, the jury sent a note to the Court expressing confusion about which drugs formed the basis for Count I.[38] Dunnell contends Trial Counsel allegedly conferred with the State, and the parties agreed the trial court could not answer the jury's question.[39] Defendant argues Trial Counsel was ineffective by not requesting that the Court simply answer the jurors' question.[40]

---

[35] *Id*. at 6.
[36] *Id*. at 7.
[37] *Id*.
[38] Addendum to Def.'s Mot., D.I. 132 (Ground 11).
[39] *Id*.
[40] *Id*.

### xii. Ground 12: Trial Counsel's Failure to Request a Limiting Instruction

24. Defendant argues Trial Counsel was ineffective in failing to request a limiting instruction relating to the purpose for which the text messages were introduced.[41]

### xiii. Ground 13: Appellate Counsel's Failure to Appeal the *Lolly/Deberry* Issue.

25. Defendant asserts Appellate Counsel should have appealed the Court's decision denying Trial Counsel's request for a Lolly*/Deberry* instruction concerning the State's failure to preserve or test the purple plastic bag that contained the safe.[42]

### xiv. Ground 14: Appellate Counsel's Failure to Investigate

26. Defendant argues the transcript from the motion in limine hearing was filed on November 30, 2018, after Appellate Counsel filed an opening brief.[43] Defendant contends Appellate Counsel's decision to file the brief without the transcript was unreasonable and caused Appellate Counsel to rely on the wrong evidentiary rule as a basis for the appeal.

### xv. Ground 15: Trial Counsel's Failure to Request a Limiting Instruction

27. Defendant argues the text message evidence was admitted under D.R.E. 803(3) as a hearsay exception and, accordingly, Trial Counsel should have sought a

---

[41] Addendum to Def.'s Mot., D.I. 132 (Ground 12).
[42] Addendum to Def.'s Mot., D.I. 132 (Ground 13).
[43] Addendum to Def.'s Mot., D.I. 132 (Ground 14).

limiting instruction to narrow the jury's consideration of the text message evidence to its proper scope.[44]

### xvi. Ground 16: Trial Counsel's Failure to Move to Suppress

28. Defendant argues Trial Counsel was ineffective for failing to move to suppress evidence obtained from the 24 Gull Turn residence.[45] Defendant maintains the affidavit supporting the search warrant for the residence did not establish probable cause because the C.I. was not reliable, the C.I.'s information never was corroborated, and the affidavit was based on stale information.[46]

### xvii. Ground 17: Trial Counsel's Failure to Effectively Question Kyle Dunnell.

29. Defendant asserts Trial Counsel's direct examination of Kyle Dunnell was ineffective because it failed to raise statements Kyle provided in an interview with Detective Giallombardo.[47] Defendant alleges that, had Trial Counsel questioned Kyle about the interview, Kyle's answers may have exonerated Defendant.[48]

### xviii. Ground 18: Prosecutorial Misconduct and Trial Counsel's Failure to Object

30. Defendant asserts Trial Counsel was ineffective for failing to object when the State during closing argument likened the King Kong text to a fingerprint.[49]

---

[44] Addendum to Def.'s Mot., D.I. 133 (Ground 15).
[45] Addendum to Def.'s Mot., D.I. 143 (Ground 16).
[46] *Id.*
[47] Addendum to Def.'s Mot., D.I. 161 (Ground 17).
[48] *Id.*
[49] Addendum to Def.'s Mot., D.I. 163 (Ground 18).

Defendant maintains the State committed prosecutorial misconduct by making this comment, as it may have misled the jury since there were no fingerprints or other forensic evidence linking Defendant to the drug evidence.[50]

## B. The State

31.    The State first argues several of Defendant's grounds for relief are barred procedurally.  First, the State contends Grounds 1 and 18 are barred because they should have been raised in the proceedings that led to the final judgment.[51] According to the State, Defendant should have raised two issues at trial or on appeal: (i) that the Court's admission of the text message evidence violated his rights under the Sixth Amendment's Confrontation Clause (Ground 1); and (ii) that the State acted improperly when it stated in closing arguments that King Kong is the fingerprint in this case (Ground 18).[52]  Second, the State argues several of Defendant's claims are barred as previously adjudicated.  The State identifies three issues that could be (and were) raised on appeal: (i) Trial Counsel's failure to exclude the King Kong text message from trial (Ground 1); (ii) Trial Counsel's failure to request a *Getz* limiting instruction for the jury's review of the King Kong text (Ground 12); and (iii) Trial Counsel's failure to request a *Getz* limiting instruction for the jury's review of other

---

[50] *Id.*
[51] State's Resp. at 7.
[52] *Id.* at 7-8.

text message evidence (Ground 15).[53] Because these three issues were reviewed on appeal before the Delaware Supreme Court, the State reasons that these grounds for relief procedurally are barred.[54] The State concedes, however, that Defendant's Motion is timely and not repetitive.[55]

### i. Trial Counsel

32.    With respect to the merits of Defendant's ineffective assistance claims against Trial Counsel, the State asserts all Defendant's alleged grounds for relief are meritless. The State argues Defendant fails to allege how Trial Counsel's challenged actions fell below an objective standard of reasonableness.[56] The State maintains Trial Counsel's affidavit demonstrates that his failure to pursue certain issues, such as a *Getz* limiting instruction and a *Flowers* hearing, all were strategic choices.[57] Furthermore, the State asserts Trial Counsel's limited direct examination of Kyle Dunnell was sound trial strategy because Kyle's prior statements contained several inconsistencies that could permit the State to conduct a cross-examination damaging to the defense.[58]

33.    The State argues several of Defendant's grounds for relief are unsupported by Delaware law. The State contends Defendant's chain of custody

---

[53] *Id*. at 8-9.
[54] *Id*. at 8.
[55] *Id*. at 6-7.
[56] *Id*. at 9.
[57] *Id*. at 11-13.
[58] *Id*. at 29-31.

argument is meritless because Delaware law does not require the State to establish a perfect chain of custody.[59] Similarly, the State asserts Trial Counsel could not, as Defendant argued, ask that the Court answer the jury's question because, under Delaware law, it is inappropriate for a judge to comment on the evidence.[60] The State maintains it was appropriate to argue during closings that the King Kong text message was the "fingerprint" of the case. According to the State, this comment merely was metaphorical and was not calculated to misstate the evidence.[61] The State maintains Trial Counsel did not act ineffectively by failing to move to suppress the search warrant for the 24 Gull Turn residence because Trial Counsel reasonably concluded that sufficient probable cause existed to support the warrant.[62]

34. Finally, the State asserts several of Defendant's arguments against Trial Counsel fail because he cannot show prejudice from Trial Counsel's conduct, even assuming Trial Counsel acted unreasonably. The State contends Trial Counsel's decision not to impeach the forensic analyst's testimony did not prejudice Defendant because the weight of the drugs, even if miscalculated, still exceeded the "super weight" threshold for sentencing purposes.[63] The State similarly argues that, even if Trial Counsel had requested a *Getz* limiting instruction, the request would have been

---

[59] *Id*. at 16-17.
[60] *Id*. at 23.
[61] *Id*. at 31.
[62] *Id*. at 28.
[63] *Id*. at 17-18.

denied because the text message evidence did not qualify as evidence of prior bad acts under D.R.E. 404(b).[64] Additionally, the State asserts Defendant has not alleged how the witness Trial Counsel chose not to call at trial would have altered the outcome of Defendant's case, beyond his conclusory statement that the witness "would have shed light to the jury."[65] Similarly, the State argues Defendant cannot show that a more detailed questioning of Kyle Dunnell would refute the State's theory that Defendant arranged the times and places of the drug purchases.[66]

### ii. Appellate Counsel

35. With respect to Appellate Counsel's performance, the State argues it was within Appellate Counsel's discretion to refrain from arguing the hearsay issues on appeal.[67] Similarly, the State asserts Appellate Counsel was not ineffective for failing to appeal the denial of the motion to suppress and the motion for a *Lolly/Deberry* instruction because Appellate Counsel maintains the discretion to select which issues to raise on direct appeal.[68] The State contends Appellate Counsel acted reasonably in not challenging the absence of a *Getz* limiting instruction under D.R.E. 803(3) because a *Getz* instruction contemplates the admission of evidence of prior acts under D.R.E. 404.[69] Further, the State argues Appellate Counsel's decision

---

[64] *Id.* at 26-27.
[65] *Id.* at 19.
[66] *Id.* at 30-31.
[67] *Id.* at 20.
[68] *Id.* at 21.
[69] *Id.*

19

not to challenge the text messages under D.R.E. 803(3) was reasonable because the Court already had ruled the text messages were not hearsay.[70] Finally, the State asserts Appellate Counsel did not ineffectively appeal the Court's denial of the motion in limine because, although Appellate Counsel did not have the trial transcripts before filing an opening brief, Defendant offers no evidence that Appellate Counsel failed to conduct a thorough review of the record.[71]

## ANALYSIS

### A. Procedural Bars

36.    Before addressing the merits of any postconviction claim, this Court first must determine whether the motion procedurally is barred under Rule 61.[72] A motion for postconviction relief may be barred for timeliness and repetition, among other things. A Rule 61 motion is untimely if it is filed more than one year after a final judgment of conviction.[73] For a defendant who files a direct appeal, this period accrues when the appeal process is complete.[74] A defendant also is barred from filing successive motions for relief under the rule.[75] Rule 61 further prohibits motions based on any ground for relief that was not asserted in the proceedings leading up to

---

[70] *Id.*
[71] *Id.* at 24-25.
[72] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[73] Super. Ct. Crim. R. 61(i)(1).
[74] *Younger*, 580 A.2d at 554.
[75] Super. Ct. Crim. R. 61(i)(2); *see* Super. Ct. Crim. R. 61(d)(2)(i)-(ii) (regarding the pleading requirements for successive motions).

20

the judgment of conviction, unless the movant demonstrates "[c]ause for relief from the procedural default" and "[p]rejudice from violation of the movant's rights."[76] Finally, the Rule bars consideration of any ground for relief that previously was adjudicated in the case.[77]

37.     Notwithstanding the procedural bars, this Court may consider a motion that otherwise is barred if the motion is based upon claims that the Court lacked jurisdiction or the motion satisfies Rule 61(d)(2)'s pleading requirements.[78]  Rule 61(d)(2) requires that the movant plead with particularity that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted;" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid."[79]

### i.  To the extent they assert ineffective assistance of counsel, Defendant's claims regarding the need for a limiting instruction are not procedurally barred.

38.     In various claims, Defendant argues Trial Counsel was ineffective in failing to seek a limiting instruction relating to the purpose for which the text messages were offered.  The limiting instruction was argued on appeal but was

---

[76] Super. Ct. Crim. R. 61(i)(3)(A)-(B).
[77] Super. Ct. Crim. R. 61(i)(4).
[78] Super. Ct. Crim. R. 61(i)(5).
[79] Super. Ct. Crim. R. 61(d)(2)(i)-(ii).

considered by the Delaware Supreme Court under "plain error" review because it was not raised to this Court. Rule 61(i)(3) bars consideration of any ground for relief that could have been, but was not, raised in the proceedings leading up to the judgment of conviction, while Rule 61(i)(4) bars consideration during postconviction proceedings of any matter previously adjudicated. As a general matter, claims of ineffective assistance of counsel do not fall within Rule 61(i)(3) because such claims cannot be raised on direct appeal.[80] At times, as discussed below, when a substantive appellate claim is raised and rejected on direct appeal, that decision might later bar an ineffective assistance claim under Rule 61(i)(4).[81] But an argument that trial or appellate counsel was ineffective in failing to raise an issue does not fall within the ambit of Rule 61(i)(3) on a first postconviction motion.

39. Here, neither subsection bars Defendant's claims regarding Trial Counsel's failure to request a limiting instruction. The Delaware Supreme Court's review under a plain error standard cannot bar the ineffective assistance claim Defendant raises.[82] Any other conclusion relies on circular reasoning. To the extent, however, that Defendant is arguing (i) the Trial Court erred in admitting the text message evidence; (ii) the Trial Court erred in failing to give a limiting instruction

---

[80] *Green v. State*, 238 A.3d 160, 175 (Del. 2020).
[81] *Id.* at 176.
[82] *Id.*

*sua sponte*; or (iii) the State committed misconduct during its closing argument, those contentions are barred under Rule 61(i)(3) or (i)(4).

### ii. Ground 1 is barred as formerly adjudicated on direct appeal.

40. Rule 61(i)(4) bars postconviction claims that formerly were adjudicated on direct appeal.[83] Formerly adjudicated claims may be reconsidered in the interest of justice, but this exception is narrow and only applies in limited circumstances, such as when the right relied upon has been recognized for the first time after direct appeal.[84] The mere fact that a postconviction claim might bear some resemblance to a formerly adjudicated claim does not trigger the "formerly adjudicated" bar.[85] Whether a claim formerly was adjudicated often turns on whether the issue received substantive review on direct appeal.

41. In its recent decision *Green v. State*,[86] the Delaware Supreme Court held that a postconviction claim was not formerly adjudicated when on direct appeal the Court only considered whether the trial court committed plain error.[87] The Court noted, however, that an ineffective assistance claim could be barred in cases where the direct appeal involved a substantive review of the claim's underlying merits.[88] The Court provided the following example:

---

[83] Super. Ct. Crim. R. 61(i)(4).
[84] *Younger*, 580 A.2d at 555 (citing *Teague v. Lane*, 489 U.S. 288, 297-98 (1989)).
[85] *Green*, 238 A.3d at 176.
[86] 238 A.3d 160 (Del. 2020).
[87] *Id*. at 176.
[88] *Id*.

23

> [I]f on direct appeal we were to reject a claim that the trier of fact considered inadmissible evidence, a claim in postconviction proceedings that trial counsel was ineffective for not objecting to the evidence would be futile and might rightly be considered formerly adjudicated.[89]

That scenario occurred in this case. Trial Counsel challenged the admissibility of the text messages on several grounds, but this Court admitted the evidence. On direct appeal, Appellate Counsel challenged the admissibility of the text messages, and the Delaware Supreme Court affirmed this Court's ruling that the messages were admissible. Defendant cannot now assert Trial Counsel was ineffective for failing to exclude the text messages from evidence when the Delaware Supreme Court substantively reviewed the admissibility issue on direct appeal.[90] And, Defendant does not satisfy Rule 61(d)(2)'s pleading requirement to escape this bar. Accordingly, this ground formerly was adjudicated and cannot be raised again under the guise of an ineffective assistance claim.[91]

## B. Ineffective Assistance of Counsel

42. To prevail on an ineffective assistance of counsel claim, a defendant must establish both that counsel's representation fell below an objective standard of

---

[89] *Id.*

[90] Throughout his motion, Defendant repeatedly refers to his belief that the text messages' admissibility should have been considered under D.R.E. 803(3), which is an exception to the hearsay rule. But this Court held the various text messages were not hearsay under Rule 801(d). The Supreme Court affirmed that conclusion. Accordingly, neither Trial Counsel nor Appellate Counsel could have been ineffective for failing to raise Rule 803 as a basis for excluding the text messages because Rule 803 applies to hearsay statements and the challenged text messages were not hearsay.

[91] To the extent Defendant contends the admission of this evidence violated the Confrontation Clause, that argument is barred by Rule 61(i)(3).

24

reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[92] There is a strong presumption that counsel's representation was reasonable.[93] Mere allegations or conclusory statements will not suffice.[94]

### i. Trial Counsel

#### a. Grounds 2, 6, 7, and 17 fail because Trial Counsel did not act unreasonably by strategically examining only select witnesses.

43. In grounds 2, 6, 7, and 17, Dunnell challenges several decisions by Trial Counsel during pretrial proceedings and trial. He argues Trial Counsel (1) "acquiesced with" the State and seemingly abandoned discovering the C.I.'s identity (Ground 2); (2) failed to impeach Ms. Harris effectively (Ground 6); (3) failed to call a witness who agreed to testify about the text messages (Ground 7); and (4) did not properly examine Kyle about his prior statements that potentially could have exculpated Defendant (Ground 17). These arguments do not meet the first prong of *Strickland* because Trial Counsel's decisions regarding these matters were strategic choices based on the defense's theory of the case. "If an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, that decision is virtually unchallengeable."[95]

---

[92] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[93] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[94] *Id.*; *Monroe v. State*, 2015 WL 1407856, at *3 (Del. March 25, 2015).
[95] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).

44. For example, Trial Counsel asserts he did not challenge Ms. Harris's testimony and lab report because doing so was not relevant to the defense's theory of the case that Defendant had no knowledge, control, or possession of the safe and its contents.[96] Trial Counsel similarly conducted a limited direct examination of Kyle Dunnell to advance the overall defense theory of the case. According to his affidavit, Trial Counsel was concerned that a detailed direct examination of Kyle regarding his statements to police would "open the door" for the State to cross-examine Kyle on the entirety of his statements, many of which were contradictory.[97] Trial Counsel avers his limited examinations of Ms. Harris and Kyle were strategic choices based on his analysis of the facts and the defense's overall theory of the case. Defendant has not made any allegations indicating Trial Counsel did not adequately investigate the facts or consider all plausible options before electing to conduct these limited examinations. Trial Counsel's explanation of the reasons for these strategic choices defeats Defendant's contention that the decisions objectively were unreasonable.

45. Trial Counsel's decisions not to call as witnesses the C.I. and the individual who appeared in the courthouse likewise were strategic. "For the purposes of an ineffective assistance claim, the decision of a trial attorney to call or not to call

---

[96] Trial Counsel's Aff. at 18-19.
[97] Id. at 23.

26

a potential witness is part of the attorney's trial strategy."[98] Trial Counsel admits he advised the witness who appeared at the courthouse that the witness could be prosecuted for any incriminating testimony. Trial Counsel further explains in his affidavit that he believed this witness would harm Defendant's defense by opening up cross-examination into the various text messages the witness sent to the seized phones.[99] This decision not to call the witness was reasonable and strategic in view of the facts known to Trial Counsel.

46. As to the motion seeking the C.I.'s identity, Trial Counsel asserts he never intended for the C.I. to testify at trial because, although the C.I. likely would testify that he purchased heroin from Kyle, he also presumably would testify he arranged the sales through Defendant.[100] Trial Counsel explains that the motion was strategic; he hoped that if the Court granted the motion, the State would seek to avoid disclosing the C.I.'s identity by stipulating that Defendant was not present at either controlled buy.[101] When the Court denied the motion, however, Trial Counsel lost any leverage to obtain a stipulation, and Trial Counsel did not believe calling the C.I. would help Defendant's case. In summary, Trial Counsel's decisions not to call the

---

[98] *Sierra v. State*, 242 A.3d 563, 573-74 (Del. 2020) (quoting *Baynum v. State*, 1990 WL 1098720, at *1 (Del. Super. June 8, 1990)).

[99] Trial Counsel's Aff. at 17. With respect to Ms. Harris's testimony, Defendant has not shown the alleged miscalculated weight would have changed his sentence. The State and Trial Counsel both assert that, even at the lower weight Defendant alleges was the correct weight, the total weight of the drugs was still sufficient for the Court to impose the heightened sentence.

[100] *Id*. at 14.

[101] *Id*. at 14-15.

courthouse witness and the C.I. were strategic choices based on what Trial Counsel believed would be best for the defense. Accordingly, Trial Counsel's choice not to call these witnesses objectively was reasonable and does not meet *Strickland*'s first prong.

### b. Grounds 12 and 15 fail because Trial Counsel did not act unreasonably by not seeking limiting instructions for the text messages.

47. Defendant asserts Trial Counsel provided ineffective assistance when he (1) failed to request a limiting instruction for the text messages (Ground 12); and (2) failed to request a *Getz* limiting instruction for the King Kong text message (Ground 15). Dunnell's contention that a limiting instruction was warranted is based on his incorrect contention that the text messages were admitted under Rules 404(b) and 803(3). Again, the Court did not admit the evidence under either rule; the Court concluded the text messages were not hearsay and were not unfairly prejudicial under Rule 403.[102] Since the text messages were not admitted for a limited purpose, Trial Counsel's choice not to seek a limiting instruction for the text messages was objectively reasonable and fails *Strickland's* first prong.

48. Defendant's challenge to the absence of a *Getz* limiting instruction similarly fails because Defendant misapprehends the rule under which the King Kong text message was admitted. A *Getz* instruction is appropriate when evidence is

---

[102] *See* Mot. in Lim. Tr. at 9-13 (Feb. 22, 2017).

admitted as a prior bad act under D.R.E. 404(b).[103]  But this Court did not admit the King Kong text message as evidence of a prior bad act.  Rather, the text message was admitted to show Defendant had knowledge of the drugs in the safe, thereby supporting the State's constructive possession argument.  In fact, Trial Counsel never argued Rule 404(b) applied.  Under the circumstances, a *Getz* limiting instruction was not warranted, and it was not objectively unreasonable for Trial Counsel not to seek a *Getz* instruction.[104]

### c. Grounds 4, 5, 11, 16, and 18 fail because Trial Counsel did not act unreasonably by failing to pursue arguments he reasonably believed were meritless.

49.     Dunnell also argues Trial Counsel was ineffective in failing to raise a number of arguments.  Trial Counsel avers he chose not to pursue several objections and arguments because he did not believe they had merit.  First, Trial Counsel states he did not seek to suppress the evidence obtained from the cell phones found in 24 Gull Turn (Ground 14) because, in his professional opinion, the accompanying affidavits contained sufficient probable cause to support the warrants.[105]  Similarly, Trial Counsel did not believe a good faith basis existed to challenge the warrant for

---

[103] *Getz v. State*, 538 A.2d 726, 734 (Del. 1988).

[104] Moreover, Defendant arguably waived this ineffective assistance claim by instructing Trial Counsel not to raise the absence of a limiting instruction in a motion for a new trial, despite Trial Counsel's belief and advice that the argument would provide a strong basis for a new trial.  Trial Counsel's Aff. at 12-13.

[105] Trial Counsel's Aff. at 17.

29

the 24 Gull Turn residence (Ground 16).[106] Trial Counsel asserts in his affidavit that the controlled heroin purchases NCCPD arranged and observed created sufficient probable cause that contraband or evidence of a crime would be found inside the residence.[107] Other than vague arguments that the warrants were not valid, Defendant does not point to anything within the warrants' four corners that supports his position. The two controlled buys conducted at the residence "corroborated" the C.I.'s tip and amounted to probable cause supporting the search. The cell phones were found in the residence with substantial amounts of heroin, a firearm, cash, and paraphernalia associated with drug dealing.

50. With respect to the chain of custody issue (Ground 5), Trial Counsel states in his affidavit that the State eventually established that the drug evidence was in NCCPD custody before being delivered to the courthouse.[108] Further, as Trial Counsel correctly points out, a perfect chain of custody is not required by Delaware law.[109] Accordingly, Trial Counsel did not make a chain of custody objection because he knew the objection likely would be overruled.[110]

---

[106] *Id*. at 20.
[107] *Id*.
[108] *Id*. at 17-18.
[109] *Id*. at 18; *Demby v. State*, 695 A.2d 1127, 1131 (Del. 1997) ("We have never interpreted [Delaware's chain of custody law] as requiring the State to produce evidence as to every link in the chain of custody. Rather the State must simply demonstrate an orderly process from which the trier of fact can conclude that it is improbable that the original item has been tampered with or exchanged.")
[110] Trial Counsel's Aff. at 17.

51.     Defendant asserts that Trial Counsel should have objected when the State referred to the King Kong text message as the "fingerprint" of the case during closings (Ground 18). In his affidavit, however, Trial Counsel contends the State's fingerprint metaphor was an appropriate closing argument.[111] In closing arguments, a prosecutor is not confined to merely restating the evidence and is entitled to explain all legitimate inferences of the defendant's guilt that flow from the evidence.[112] A prosecutor may not, however, misstate evidence or make remarks that could inflame the jury's passions or prejudices.[113] The State's fingerprint metaphor did not misstate the evidence against Defendant; rather, the State sought to infer Defendant's guilt from the King Kong text message. The State's fingerprint metaphor was a proper closing remark and, accordingly, Trial Counsel's decision not to object to the metaphor was reasonable.

52.     Finally, when considering the jury's note (Ground 11), Trial Counsel and the State correctly concluded it would be improper for a trial judge to comment on the evidence.[114] Trial Counsel could not, as Defendant argues, ask that the judge simply answer the jury's note. Trial Counsel's choice not to pursue arguments he

---

[111] *Id*. at 24.

[112] *Hooks v. State*, 416 A.2d 189, 204 (Del. 1980) (citing *State v. Mayberry*, 245 A.2d 481 (1968), *cert. denied* 393 U.S. 1043 (1969)).

[113] *Brokenbrough v. State*, 522 A.2d 851, 855 (Del. 1987).

[114] *Id*. at 19; Del. Const. Art. IV, § 19; *see also State Highway Dept. v. Buzzuto*, 264 A.2d 347, 351 (Del. 1970) ("[T]he Delaware Constitution prohibits a trial judge from commenting on the evidence. This prohibition applies equally to the judge's instructions to the jury and to comments made by the judge in the course of the trial").

believed were meritless was not objectively unreasonable.  The Sixth Amendment does not require counsel to pursue meritless arguments.[115]  On the contrary, Trial Counsel had a duty not to raise frivolous claims.[116]  Accordingly, Trial Counsel's failure to raise these issues was not objectively unreasonable.

### d. Ground 3 fails because Defendant has not sufficiently established that he was prejudiced.

53.     As to Defendant's argument that Trial Counsel failed to investigate and call as witnesses the other declarants in the text messages, Defendant has not established any prejudice arising from this alleged failure.  Defendant asserts Trial Counsel did not contact the declarants of the incoming text messages, even though Defendant asked him to do so.  According to Defendant, these declarants would have testified on his behalf at trial.  Even assuming this failure fell below an objective standard of reasonableness, Defendant has not alleged any facts regarding these declarants' identities or their anticipated testimony.

54.     Conclusory allegations that additional witnesses would have influenced the jurors' decision are not sufficiently specific to demonstrate actual prejudice.[117]  In *Outten v. State*,[118] the defendant similarly brought an ineffective assistance of counsel

---

[115] *Shelton v. State*, 744 A.2d 465, 503 n.186 (Del. 2000) (citing *Flamer v. State*, 585 A.2d 736, 758 (Del. 1990)).

[116] *State v. Ryle*, 2019 WL 2714817, at *6 (Del. Super. June 27, 2019) (citing *Fairthorne Maint. Corp. v. Ramunno*, 2007 WL 2214318 (Del. Ch. July 20, 2007)).

[117] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996); *Palmer v. State*, 1994 WL 202281 at *1 (Del. May 5, 1994)

[118] 720 A.2d 547 (Del. 1998).

claim relating to his counsel's failure to call additional witnesses. The defendant did not identify the witnesses or the content of their potential testimony.[119] Although the Delaware Supreme Court recognized defense counsel's general duty to investigate potentially mitigating evidence, the Court held that the defendant's allegations were too conclusory to support a finding that he was prejudiced by defense counsel's actions.[120] Similarly, in this case, Defendant's failure to provide any details regarding these potential witnesses leaves him unable to show with any reasonable degree of probability that the declarants' testimonies would have altered the outcome at trial.

### ii. Appellate counsel

55.     The United States Supreme Court has recognized that appellate counsel "need not (and should not) raise every nonfrivolous claim."[121] Rather, appellate counsel may select from among different claims in order to maximize the likelihood of success on appeal.[122] In cases where appellate counsel completely fails to file a merits brief, a defendant need only show that "a reasonably competent attorney would have found one non-frivolous issue on appeal."[123] On the other hand, in cases where appellate counsel does file a merits brief on direct appeal, the defendant faces the higher burden of showing that "a particular nonfrivolous issue was clearly stronger

---

[119] *Id.* at 553.
[120] *Id.*
[121] *Smith v. Robbins*, 528 U.S. 259, 288 (2000).
[122] *Id.*
[123] *Id.*

than issues that counsel did present."[124] Defendant's Motion challenges Appellate Counsel's failure to appeal the Trial Court's denial of: (i) Defendant's motion in limine; (ii) Defendant's motion to suppress, and (iii) a *Lolly/Deberry* instruction. Because Appellate Counsel filed a merits brief on other issues in this case, Defendant must demonstrate that these three issues were stronger than the issues Appellate Counsel pursued.

### a. Grounds 8, 9, and 10 fail because it was not unreasonable for Appellate Counsel to only pursue select issues on direct appeal.

56.     Contrary to Defendant's arguments, Appellate Counsel *did* appeal the denial of the motion in limine to the Delaware Supreme Court. Appellate Counsel challenged the Court's admission of the text messages on the grounds that they were not properly authenticated and that, under D.R.E. 403, their probative value substantially was outweighed by the danger of unfair prejudice. Defendant argues, however, that Appellate Counsel also should have challenged the messages' admission on the ground that they were inadmissible hearsay. In her affidavit, Appellate Counsel explained that she believed there was no merit to the hearsay argument. Appellate Counsel was concerned that the case Trial Counsel relied on for his hearsay argument lacked legal analysis and did not support a viable argument.[125] Instead, Appellate Counsel believed there was a strong argument that introduction of

---

[124] *Id.*

[125] Appellate Counsel's Aff. at 5.

the text messages improperly allowed the jury to convict Defendant of dealing drugs that were locked in the safe.

57.   With respect to the suppression issue, Appellate Counsel avers that she chose not to appeal the ruling on the motion to suppress because she believed it was more prudent to challenge the Court's denial of Defendant's motion for judgment of acquittal.[126]   According to Appellate Counsel, appealing the motion to suppress would require a fact-intensive argument and would bring into the record damaging facts linking Defendant to the drugs in 24 Gull Turn, thereby weakening Defendant's argument that this court erred in denying his motion for judgment of acquittal.[127] Appellate Counsel did not believe the probability of success on the suppression issue was strong enough to justify this risk.[128]

58.   Appellate Counsel was entitled to exercise professional judgment and only pursue certain issues on appeal.  Defendant has not demonstrated why the issues he raises in his Motion were stronger than the issues Appellate Counsel chose to advance on appeal.  Accordingly, Appellate Counsel's decision not to pursue certain issues on appeal did not fall below an objective standard of reasonableness.

59.   Defendant's argument supporting Ground 10 is muddled; he appears to contend Appellate Counsel should have challenged the text messages' admissibility

_____

[126] *Id*. at 8.
[127] *Id*.
[128] *Id*.

under D.R.E. 404(b) or under D.R.E. 803(3). Defendant has not shown Appellate Counsel's arguments were unreasonable. Neither rule Defendant cites applies to the facts of the case. The text messages were not "prior bad act" evidence admitted to show Defendant's conduct in conformity therewith. Rather, the text messages were offered to show Defendant and Kyle were working together to sell drugs, thereby supporting the State's constructive possession argument. As to hearsay, this Court concluded the text messages were not hearsay under D.R.E. 801(d), thereby obviating any need to consider whether the messages fell within 803(3) or any other hearsay exception. Because Appellate Counsel's decision to challenge the text messages for authenticity and undue prejudice objectively was reasonable, this argument fails.[129]

### b. Ground 14 fails because Appellate Counsel conducted diligent research and used her professional judgment when deciding how to challenge the text message evidence.

60. Defendant asserts Appellate Counsel was ineffective by failing to investigate the bases for the motion in limine before filing the appeal. Defendant argues Appellate Counsel did not have the transcripts from the motion in limine hearing when she filed her opening appellate brief and, consequently, incorrectly challenged the text messages' admission under D.R.E. 404(b) rather than D.R.E. 803(3). Appellate Counsel admits she did not have a copy of the hearing transcripts

---

[129] To the extent Defendant contends Appellate Counsel should have argued a limiting instruction should have been given with respect to the text messages, Appellate Counsel specifically raised that argument on appeal. *See* Appellant's Opening Br., at 23-24.

when the opening brief was filed.[130] Appellate Counsel denies, however, that she challenged the evidence under D.R.E. 404(b).[131] Appellate Counsel states she challenged the text messages on the grounds they unfairly were prejudicial under D.R.E. 403 and they could not be properly authenticated under D.R.E. 901.[132] Appellate Counsel explains she did not challenge the text messages as hearsay because, in the course of her research, she found case law that text messages offered to show knowledge of a drug location are not offered for the truth of the matter asserted.[133] Under these circumstances, it cannot be said Appellate Counsel unreasonably failed to sufficiently investigate the hearsay issue. Although Appellate Counsel did not have the hearing transcripts (through no fault of her own), she conducted research into the hearsay issue and concluded it was not a viable argument based on existing case law. Accordingly, Appellate Counsel's representation was not objectively unreasonable.

### c. Ground 13 fails because Defendant cannot show prejudice from Appellate Counsel's failure to raise these issues.

61. Finally, Defendant challenges Appellate Counsel's decision not to appeal the Court's denial of the *Lolly/Deberry* instruction regarding the State's failure to preserve the plastic bag containing the safe where the contraband was found.

---

[130] Appellate Counsel's Aff. at 5.
[131] *Id*.
[132] *Id*.
[133] *Id*.

Appellate Counsel cannot recall her thought process in choosing not to raise this issue on appeal. But, as discussed above, counsel is not required to raise every issue on appeal and is entitled to strategically select what arguments to advance.[134] Even assuming Appellate Counsel's decision was unreasonable, however, Defendant has not sufficiently alleged prejudice from this decision. Defendant has not shown the Delaware Supreme Court likely would have reversed his conviction on appeal had Appellate Counsel raised the *Lolly/Deberry* issue. As Appellate Counsel noted, the State never sought to prove Defendant actually possessed the safe, only that he constructively possessed the drugs inside it. Even if the Court had instructed the jury to assume the purple bag did not contain Defendant's fingerprints, this would not have materially weakened the State's constructive possession argument. Defendant has not sufficiently alleged a reasonable probability that the outcome of the direct appeal would have been different had Appellate Counsel appealed the lack of a *Lolly/Deberry* instruction. Accordingly, Appellate Counsel did not provide ineffective assistance.

## C. Postconviction Counsel's Motion to Withdraw

62. Rule 61(e)(7) provides that counsel appointed to represent a defendant in postconviction proceedings may move to withdraw if "counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it,

---

[134] *Id*. at 9.

and counsel is not aware of any other substantial ground for relief available to the movant[.]"[135]   A motion to withdraw must state the factual and legal bases for counsel's opinion.  In considering the motion, the Court must "be satisfied that . . . counsel made a conscientious examination of the record and the law for claims that could arguabl[y] support [the defendant's] Rule 61 motion."[136]  The Court also must review the record independently in order to determine whether the case is devoid of any arguable claims for relief.[137]  Postconviction Counsel's Motion to Withdraw demonstrates he thoroughly reviewed the relevant law and the record in this case, including Trial and Appellate Counsel's performance.  Postconviction Counsel had the entire record available to him.  As noted above, the Court independently has reviewed the record and finds no merit to Defendant's claims.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Postconviction Relief is **DENIED** and Postconviction Counsel's Motion to Withdraw is **GRANTED**. Counsel's continuing obligations to Defendant are limited to those set forth in Rule 61(e)(7)(ii).  **IT IS SO ORDERED.**

_/s/ Abigail M. LeGrow_
Abigail M. LeGrow, Judge

---

[135] Super. Ct. Crim. R. 61(e)(7).
[136] *State v. West*, 2013 WL 6606833, at *3 (Del. Super. Dec. 12, 2013), *aff'd*, 100 A.3d 1022 (Del. 2014).
[137] *Id*.